**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| ex rel. ANTHONY BOLTON, | ) | |
|     Petitioner, | ) | |
| | ) | |
|     v. | ) | 05 C 801 |
| | ) | |
| BRADLEY J. ROBERT, Warden, | ) | |
| Menard Correctional Center, | ) | |
|     Respondent. | ) | |

**MEMORANDUM AND ORDER**

Petitioner Anthony Bolton's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the court. For the following reasons, Bolton's petition is denied.

**I.    Background**

The court will presume that the state court's factual determinations are correct for the purposes of habeas review as Bolton has not provided clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The court thus adopts the state court's recitation of the facts, and will briefly summarize the key facts that are relevant to Bolton's § 2254 petition.

    **A.    Procedural Posture**

Bolton was convicted of first-degree murder on March 21, 1997. He was sentenced to a fifty-year term of imprisonment. On direct appeal, Bolton argued that the State failed to prove him guilty beyond a reasonable doubt, his counsel was ineffective for not joining in a stipulation between the State and his co-defendants regarding a pre-trial statement made by Marcus Flowers, and his sentence was excessive and based on an improper aggravating factor. On March 15,

1999, the Illinois Appellate Court rejected these claims and affirmed the trial court. Bolton did file a petition for leave to appeal ("PLA") with the Illinois Supreme Court.

On July 9, 1999, Bolton filed a state post-conviction petition asserting: (1) his right to due process was violated when the prosecutor failed to disclose the photographs of the lineup from which he was identified; (2) ineffective assistance of counsel based on his attorney's failure to move for a mistrial when the State could not produce lineup photos; and (3) he was innocent based on newly discovered evidence. The trial court dismissed the petition, and Bolton filed an appeal with the Illinois Appellate Court on December 4, 2007, which was denied on June 27, 2008. Bolton then filed a PLA containing the same three claims with the Illinois Supreme Court, which denied it on November 26, 2008.

In the meantime, on February 8, 2005, and while his state post-conviction proceedings were pending, Bolton filed a § 2254 petition with this court, asserting the three claims raised in his state post-conviction petition. On September 5, 2006 this court stayed proceedings pending completion of the state court proceedings. In 2009, this court concluded that Bolton had exhausted his state court remedies and thus lifted the stay.

### B. Facts

On October 21, 1994, Bolton arrived at the London Town apartment complex in Chicago with co-defendants Raymond Clark and Shaparal Watts, as well as Marcus Flowers. Daccheus Birmingham and his passenger, Brandy Smith, drove into the complex. As Smith began to exit the car, she noticed someone standing behind it. The person was Bolton, who approached the car and fatally shot Birmingham because he thought he was a member of a rival gang. The witnesses

at trial included Smith and Flowers, who were both present at the scene, and Hattie May Singleton, who viewed the shooting from a distance.

### 1. Brandy Smith

Smith testified that on October 21, 1994, she and Birmingham were driving to pick up Birmingham's friend. They had trouble locating his address, so Birmingham made the fateful decision to turn into the London Town apartment complex, but then left and drove to a gas station. The couple returned to the complex a short time later. Smith testified that as she started to exit the car in order to check the complex's address, she saw someone behind the car. Bolton ran up to the passenger side of the car, about seven feet away from the door, and said "we got some [Gangster Disciples] over here."

Smith looked directly at Bolton's face as soon as he pointed the gun in her direction. She yelled to Birmingham to put the car in reverse. He did, but the car became stuck on the curb. As Birmingham struggled to free the car, Bolton ran to the driver's side and shot into the car from approximately eight feet away. As bullets flew, Birmingham told Smith to get down. From the floor of the car, Smith saw Bolton from the chest up and heard bullets shatter the car window. Birmingham sped away until he lost consciousness and drove into a trashcan.

Smith identified Bolton in a lineup the following day. With respect to the lineup, Smith expressly denied that the police told her who to identify. She testified that she learned Bolton's name "[a]fter [she] identified him" and that "when [she] picked him out, they told [her] his name." However, between those two questions, she responded positively when asked if "they [told her] he is the guy that [they] think did the shooting . . . before [she] viewed the lineup."

The detective conducting the lineup asserted Smith was never told who to identify. The detective also testified that the lineup consisted of four people, each of whom was asked to turn with their right arm extended in a shooting stance. Photographs of the individuals in a shooting stance were taken but could not be developed.

### 2. Marcus Flowers

Flowers testified that he, Bolton, Clark, and Watts, drove to the apartment complex on October 21, 1994, to find men who had previously hassled them about their gang affiliation. Flowers asserted that they drove through the complex without incident, exited it, and were pulled over by the police.

He was then impeached with a statement he had given to a State's Attorney in the early morning hours following the shooting. In the statement, Flowers related that his group saw a blue car while they were in the apartment complex. After Clark said the driver looked like one of the people who had made the gang comments, Flowers stayed in the car but the other three men jumped out. Watts gave Bolton a gun, which Bolton shot into the vehicle several times. At the time of the shooting, Flowers was approximately thirty feet away from Bolton. After being confronted with his statement, Flowers admitted that the statement was correct and his prior testimony was not truthful.

### 3. Hattie May Singleton

Singleton testified that on the evening of October 21, 1994, she was at her home with friends. She heard a loud commotion outside her house, and went to her front porch. Singleton saw three men standing on the hill on the north side of the street and heard them talking loudly,

but could not see them closely. She also viewed an old, dark colored Oldsmobile Cutlass parked under a tree on the hill.

As she observed the scene from her porch, she saw a car drive onto her street and heard one of the three men say, "there go that nigger now." As the car on her street began to turn right, the three men walked towards it. She ran inside her house to call the police, but before she reached her phone, she heard at least three gunshots. When she stepped back outside, the car under the tree had disappeared and the other car was moving slowly away.

## II. Discussion

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In *Williams,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if its decision was objectively

unreasonable. *See Lockyer v. Andrade,* 123 S.Ct. 1166, 1174 (2003). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Searcy v. Jaimet,* 332 F.3d 1081, 1089 (7th Cir. 2003) (decision need not be well reasoned or fully reasoned and is reasonable if one of several equally plausible outcomes); *Schultz v. Page,* 313 F.3d 1010, 1015 (7th Cir. 2002) (reasonable state court decision must be minimally consistent with facts and circumstances of the case).

### B. Bolton's Claims

As noted above, Bolton argued in his PLA that his conviction should be vacated due to prosecutorial misconduct, ineffective assistance of counsel, and newly discovered evidence. For the following reasons, these arguments are unavailing.

#### 1. Prosecutorial Misconduct

Bolton contends that the State's failure to produce the lineup photographs at the trial constitutes prosecutorial misconduct. According to Bolton, the prosecution intentionally suppressed the line-up photographs, but if they had been presented, they would have exonerated him.

Under *Brady v. Maryland*, 373 U.S. 83 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. To establish a *Brady* violation, a defendant must demonstrate that: (1) the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) the State suppressed evidence willfully or inadvertently; and (3) the suppression resulted in prejudice.

*Strickler v. Greene*, 527 U.S. 263, 280-82 (1999). Moreover, a *Brady* claim can succeed only if "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995).

The Illinois Appellate Court rejected Bolton's prosecutorial misconduct claim based on its conclusion that the record did not demonstrate that the photographs existed, stating, "there is no evidence that these photographs exist. There was clear testimony that such photographs were taken but equally clear testimony that the photographs could not be developed and that the police never received lineup photographs." Bolton has not pointed to any evidence indicating that photographs, in fact, existed.

Photographs that do not exist by definition cannot be exculpatory. In addition, given the lack of any evidence showing that the photographs were developed but withheld, the state court's rejection of Bolton's *Brady* claim on the ground that the photographs did not exist was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(2); *see also Mendiola v. Schomig*, 224 F.3d 589, 592 (7th Cir. 2000) (state court's conclusion that a witness did not make an alleged exculpatory statement was not unreasonable given lack of clear and convincing evidence that the statement existed); *Pira v. United States*, 2009 WL 1098704 (N.D.Ill. Apr 23, 2009) (NO. 09 C 476) (a defendant seeking federal habeas relief "cannot state a Brady claim based upon evidence that does not exist"). Thus, Bolton's claim of prosecutorial misconduct fails.

### 2. Ineffective Assistance of Counsel

Approaching the missing photograph issue from another angle, Bolton next argues that his trial counsel rendered constitutionally ineffective assistance because he failed to seek a

mistrial when the State did not disclose the lineup photographs. To render effective assistance of counsel under the Sixth Amendment to the United States Constitution, counsel's performance must satisfy the well-known *Strickland* standard. *See Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Under the first prong of the *Strickland* standard, Bolton must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. The second *Strickland* prong requires Bolton to establish that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

The Illinois Appellate Court correctly identified the standard. *See* Answer, Ex. J at 5 ("To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced defendant. . . . [To demonstrate prejudice, defendant must] show a reasonable probability that the result would have been different absent counsel's allegedly deficient performance."). It then concluded that no prejudice existed because counsel for Bolton's co-defendants had unsuccessfully sought a mistrial based on the photographs so Bolton's counsel could not be faulted for deciding against filing a similar motion, which also would have been rejected. It also held that since the photographs were not available, there was no basis for counsel to move for a mistrial.

This sensible, common sense decision is not an "objectively unreasonable" application of *Strickland*. Moreover, if a defendant fails to satisfy one of the *Strickland* prongs, the court's inquiry under *Strickland* ends. *See Strickland v. Washington*, 466 U.S. at 697; *see also Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2002). Because the state court rejected Bolton's claims based on a lack of prejudice, it was not required to address the second *Strickland* prong. The

court thus concludes that Bolton is not entitled to relief based on his ineffective assistance of counsel claim.

### 3. Newly Discovered Evidence of Innocence

Finally, Bolton asserts that evidence discovered after his trial proves he is innocent. Bolton's claim of innocence is based on an affidavit from Velcin Thomas. In the affidavit, Thomas stated that he was at the police station when Bolton was placed in a lineup and heard Detective Cross tell another detective say he planned to tell Brandy Smith to identify Bolton as the shooter.

Bolton presented this evidence to the Illinois Appellate Court, which rejected his actual innocence claim, explaining:

> [I]t is not evidence that [Bolton] did not commit the murder of which he was convicted, but merely purports to impeach Smith's corroborated lineup identification. Moreover, it is not of such conclusive character that it would probably change the result of a new trial. Smith and the detective testified that Smith was not told who to identify. Smith's momentary answer that she was told who [Bolton] was before her lineup identification was clearly negated by her firm answers both before and afterwards that she was not told who [Bolton] was until after her identification. Lastly, Thomas did not participate in or attend the lineup itself. Under these circumstances, Thomas' affidavit that a detective had said that he was going to tell Smith who to identify does not reasonably establish that anyone actually did so.

Answer, Ex. J at 6-7.

As noted by the respondent, in *Herrera v. Collins*, the Supreme Court held that, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." 506 U.S. 390, 400 (1993). The Seventh Circuit has clarified that, "[a]lthough language in the majority opinion in *Herrera* appears to bar habeas

claims based solely on actual innocence, the concurring opinion of Justices O'Connor and Kennedy makes clear that a majority of justices agree that habeas relief would be warranted upon a truly persuasive showing of actual innocence, at least in a capital case." *Gomez v. Jaimet*, 350 F.3d 673, 679 n.1 (7th Cir. 2003). This is not a capital case, so Bolton cannot obtain federal habeas relief based on the affidavit.

In any event, even if he could, his actual innocence claim would still be unavailing. To justify habeas relief, Bolton must make an "extraordinarily high" showing of innocence. *Herrera v. Collins*, 506 U.S. at 417. Thomas' affidavit does not meet this standard for the reasons articulated by the state court. First, it does not show that Bolton did not shoot Birmingham. Instead, it shows that Thomas would have testified in a manner meant to impeach Smith's lineup identification, by saying that a detective said he intended to tell Smith who to identify (not that a detective said he *had* told Smith who to identify).

Second, Smith's lineup identification was not the only evidence introduced by the State. The detective testified that Smith was not told who to identify. In turn, while Smith answered "yes" when asked if she was told who Bolton was before she made her identification, she also expressly stated twice that no one told her who Bolton was until after she identified him. Finally, Thomas did not participate in or attend the lineup. He thus could not have provided any testimony about what transpired during the lineup, what (if anything) Smith was told during the lineup, and the circumstances under which Smith identified Bolton.

Moreover, Bolton's emphasis on Smith's identification does not take other trial testimony into account. Flowers drove with Bolton and others to the apartment complex on the day of the shooting, and admitted that Watts gave Bolton a gun and that Bolton fired into Birmingham's

car. In addition, Hattie May Singleton, a disinterested witness, testified in a manner consistent with both Smith and Flowers' version of events.

An uncorroborated statement that at best impeaches one brick on a wall of evidence provided by the State does not rise to the level of "a truly persuasive showing of actual innocence." *See Gomez v. Jaimet*, 350 F.3d at 679 n.1. This is consistent with the Illinois Appellate Court's decision rejecting Bolton's claim of actual innocence based on the affidavit. Moreover, Bolton has not established that this decision was "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. Accordingly, Bolton's request for habeas relief based on the affidavit fails.

### C. Certificate of Appealability

As a result of recent amendments to Rule 11 of the Rules Governing § 2254 Cases, the court must consider whether a certificate of appealability should issue. *See* Rule 11(a) of the Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant").

Under 28 U.S.C. § 2253(c)(2): "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2) [t]he certificate must identify each substantial constitutional question; (3) [i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4) [a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5) [i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no

certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

For the reasons discussed above, Bolton has not presented least one substantial constitutional question for appeal. Accordingly, the court declines to issue a certificate of appealability.

### III. Conclusion

For the above reasons, Bolton's § 2254 petition is denied and the court declines to issue a certificate of appealability. The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.

DATE:   August 19, 2010

                                           Blanche M. Manning
                                           United States District Judge